We will now hear Metropolitan Life Insurance Company v. Fred Liebowitz. Please take your time. Mr. Maloney, whenever you're ready. My name is John Maloney. I represent the appellant, Dr. Liebowitz. If it pleases the Court, I'd like to start on Argument 2, which is a statute of limitations. As time permits, I'll move into the fourth argument, which deals with the prompts issue. Again, if time permits, we can move into the other arguments. In Veto Group 2, LLC v. Unger-Deuter, reported at 648 Fed Appendix 839, this Court wrote that in the context of establishing a cause of action based upon fraud, the Florida law makes clear, however, that in the civil context, a party who relies on a misrepresentation must show that it exercised some diligence in investigating the misrepresentation, unless it is shown that the fraudulent party had v. Bank of America, cited at 218 U.S. District Lexus 31342. The Florida Middle District Court wrote, but Florida law is clear that simple reliance on a misrepresentation is not enough to delay the accrual of a fraud claim because a party has a duty of due diligence. However, in the District Court's order denying summary judgment, the District Court cited to Independent Fire Insurance Company v. Arvidson, 604 Southern 2nd 854, for the governing proposition that an insurer is entitled to rely upon the accuracy of the information in the insurance in the District Court's decision, was that it was applying Florida common law for the elements of a cause of action based upon fraud, as opposed to the issue of when did that cause of action based upon fraud accrue. We know that in Florida Statute 95.013, Section 2A, the cause of action for fraud accrues from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence. What is needed to prove fraud as a common law cause of action is a different question altogether from what is needed to establish when a cause of action based upon fraud accrues. Furthermore, the District Court wrote in its summary judgment order, Dr. Leibowitz's argument that MetLife was required to affirmatively plead delayed discovery also fails. The statute of limitations is an affirmative defense and MetLife need not have negated it in its complaint. In Beto Group 2 v. Ungerter, which I've cited before, this court wrote, Beto makes no allegation that defendants had exclusive or superior knowledge or otherwise prevented Beto from conducting its own investigation. Beto was thus still required to conduct independent investigation of the representations made by defendants agents. Following Beto. Let me just stop you. So is your position that when the insured fills out an application like this one minute and it's got four or five pages of questions with information to be filled in, that the insurance company has the obligation to go behind and investigate each and every fact put forth in the application, even if there's no other reason to doubt the veracity of those facts? I believe that the insurance company ought to, as a matter of business, investigate those facts which it considers most important in deciding whether to issue coverage. And again, the... So how, I mean, I would think that the insurance company considers those facts important to issuing coverage or else it wouldn't have asked about them, right? Well, in this case, I think what distinguishes us is that when the claim, even before the claim was first submitted, but when the claim was submitted, MetLife's claims department knew to go to the Florida website or the department, BOEM, Florida Medicine, and look up the licensing information for Dr. Leibowitz. They saw then at that point in time, this is November 2018, November 29th, 2018, that there were administrative complaints pending against Dr. Leibowitz when his application was submitted. Now, the testimony at trial, as well as summary judgment phase, was that the claims department does this as a matter of a common business practice. So if the claims department does it as a matter of common business practice, why then shouldn't the underwriting department do so as well? Because after all, the testimony from MetLife at trial was that these policies are issued to high-wage earners like doctors and lawyers. And of course, these professions are licensed. And so since this is a product, an insurance product that focuses on this particular market, why can't they exercise due diligence and look up the licensing information at that point in time rather than waiting until the claim is first submitted and then exercise due diligence by then checking the licensing information as to that professional? And that, I think, is a distinguishing factor, is they do it as a business practice in claims when a claim comes in, but they don't do it as a business practice at the underwriting stage. And that's not really fair. If they're going to be relying upon licensing information as crucial to the decision whether to issue coverage, what harm would it be to MetLife to exercise due diligence required by the delayed discovery rule to go and check the licensing information as to this individual? I'm sorry to interrupt you, but could you make sure to stand by the microphone? I want to make sure there are live stream works. Thanks. So what would be the, you know, there is a clear justification for MetLife to exercise the same due diligence in underwriting by verifying licensing information for this particular market, because this market is for high-wage earners, doctors, lawyers. If they do this as a common business practice when a claim is submitted, and that was the testimony, this is a common business practice, we look at the licensing information. Why can't they do that as part of the due diligence when they're looking at the facts, the representations? And these are all representations by Dr. Leibowitz. This is the information you're asking for. Here's my answer. So the high-wage earners, like doctors and lawyers, your position is that they should be able to omit things and perhaps hope that the insurance company doesn't do a thorough enough job during the underwriting process? Absolutely not. It is the duty of an applicant to respond to the application questions fairly and honestly as they understand the question. That is a duty that the applicant has, and I believe in that. But at the same time, and this goes to one of the other arguments, the application questions were very ambiguous to Dr. Leibowitz. He answered them the best way he understood them. And so, MetLife, having superior knowledge of the information it's looking for and thinking that the information relating to licensing and information relating to whether this individual is subject to an administrator proceeding, ought to go ahead and check the licensing file of these high-wage earners, doctors, lawyers, as a business practice, just as they do in the claims department. That's what I think is the main thing here, is if the claims department does it as a business practice, why shouldn't the underwriting department do as well? Now, again, let me stop you. So would an insurance company be better off in protecting itself but not asking any questions at all? Absolutely not. By just getting a name and a security number and then it has no obligation to research? Absolutely not. The insurance company needs information to underwrite the application. And I get back to the fundamentals, that it is the duty of the applicant to respond to the questions fairly and honestly as they understand the questions. It is the insurance company gets to look at the questions, look at the answers and say, okay, we're going to issue, we're not going to issue. But we're not dealing here with a cause of action, of fraud and justifiable reliance. Because in Florida, a fraud action does not require proof of justifiable reliance. What we're dealing with here is a statute of limitations defense. And that throws us directly back into the delayed discovery rule. And the delayed discovery rule says that the person who has a duty to investigate past of representation, you cannot simply, as Paradis wrote, but Florida law is clear that simple reliance on a misrepresentation is not enough to delay the accrual of a fraud claim because a party has a duty or reasonable due diligence. So this argument about delayed discovery is only in the context of a statute of limitations issue. If they had filed the lawsuit within four years of the issue date, we want to be concerned with the delayed discovery rule. Ironically, it's because they did not act promptly to, you know, rescind the policy after they were aware of the administrator proceeding that was pending when he filled out the application that they got, they slipped past the four months they had to file an action that would have avoided any issue with the delayed discovery rule. Thank you. I think you'll see that your time has run out. Thank you. Mr. Marr for Metropolitan Life. Yes, thank you, Your Honor. May it please the court, John Marr from Shetson Bowen representing the Appalee Plaintiff Below Metropolitan Life Insurance Company. Addressing counsel's argument on the statute of limitations, all of the cases cited by the appellant do not involve insurance. He attempts to ignore or wave away the very clear Florida precedent that says that insurance companies are entitled to rely on the truthfulness of the representations in the application. And as Your Honor was pointing out through his question, insurance would grind to a halt if it were the job of the insurance company to independently investigate every representation in those multi-page policies in order to... The premiums would go out of sight. It's unimaginable. It's unimaginable what would happen to the market. You wouldn't even be able to quote a premium to an insurer. You'd have to say, well, here's what the premium is. It all depends. We're going to investigate you and it may be very, very big. So you better go to Allstate or somebody. Well, even Allstate could not cover the cost of the investigation and counsel in his statement that, oh, it would only be the important questions. Well, not only that, the investigation itself could give rise to all sorts of court actions in terms of reputation and defamation, all that sort of stuff. Yes, Your Honor, we're under the... You uncover something and all of a sudden you decline coverage and you're making representations to the insured about his character or his truthfulness off the hand. Yes, Your Honor. You know, forward going, as it were, as opposed to responding. Yes, Your Honor, and here in Florida... I'm trying to make your argument. Yeah, you are. I don't know what to say other than to agree with you, Judge Joe Flatton. Kind of preposterous. Yes, Judge. But your colleague can answer that question. Okay. And in Florida, we are under the sort of Damocles of bad faith, right? So if we were to accuse wrongfully an insured of fraud, as we were compelled to do in this case, we would be at our peril to do so. And responding to your question, Judge, note that they attempt to take advantage of the statute of limitations in a claim that was filed three years late, all right? So what they're saying is, Judge, if you take a look at the record, Dr. Leibowitz waited three years, 2018, until he said, filed his claim for the first time. They would state that he gets to use that period to bar MetLife from fraudulently rescinding, because the statute's right. So therefore, under their analysis, the insured could wait past the statute of limitations, quote, expiration, then file their claim, and then be innocent or protected from their own fraud. So again, we do believe that that situation has been foreclosed by Florida precedent and is not the law of this state. The questions also, he briefly said, were ambiguous. They were not. We encourage the court to look at the Travelers versus Mader Law Group opinion that is cited in our brief, which sets forth the standard that the question of ambiguity in an application is whether it was objectively reasonable for the insured to answer the question the way he or she did. Here, Judge Steele, as a matter of fact, found that it was not objectively reasonable under all the facts and circumstances of his situation with these multiple complaints by the Board of Medicine, some involving the death of a patient due to overprescription of narcotics. It was not objectively reasonable for him to not disclose those administrative complaints in his response. Also, the appellant fails to argue in their brief about the standard for a factual finding by the district court judge, and it is not surprising that that is the case, since all this court has to find is that it was plausible for Judge Steele to rule the way he did under the facts. And that is why they cannot find reversible error on this record. Also, on the statute of limitations, Judge Steele found that the earliest that MetLife knew or should have known under the Florida law of the fraudulent misrepresentations was in 2018, at the time Dr. Leibowitz filed his claim, which led to the investigation. As to a fundamental point, and I think as Your Honor, Judge Joe Flatt is pointing out, there's a fundamental difference between underwriting and claims. In underwriting, you're dealing with a large volume of customers who are coming in to buy coverage. The premiums are, of course, rated according to experience, and therefore, the insurance company is forced to rely on those representations. In claims, you have a specific case where the insured is saying, you owe me money under this contract, and therefore, MetLife needs to determine the facts of that claim. So his equation of underwriting with claims just doesn't make any sense in the real world. And so we would ask that the final order of Judge Steele rescinding the policy issue to Dr. Leibowitz be affirmed. Let me ask you this before you sit down. Sure. We didn't address it with opposing counsel, but it concerns the incontestability provision, which used the word effective instead of issue, which is not in strict conformity with the statute. And then your opponent would say, well, look at this Kaufman case, and it says when you have a difference of nonconformity, then he gets to choose the most favorable provision to him. So what is your response to that? Yes. First of all, at the outset, it should be pointed out that that question of effective date versus issue date has absolutely no relevance to the merits of this case. It might if MetLife were claiming that it could rescind without showing fraud, but that is not the case here. MetLife actually pled and proved the higher standards. So that is the first thing, is that that language change has no effect. The other is Judge Steele correctly construed the policy language because Florida Statute 627.627 permits the court to read in conformity with state statutes the minimum requirements of state law. So basically, he read it as having issue date rather than effective date and moved on because it was of no moment in this case. Also, Judge, there is the other statute, 627.4122, which allows an insurer to modify language so long as it is not less favorable in any particular to the insured or beneficiary. And here, if he wanted to include subsection 2, which is what's called the accordion clause, subsection 1 is the fraud exclusion, meaning that it's two years absent of showing a fraud is the bar to rescission. And the accordion clause subsection 2 says that if you're disabled within the first two years, that contestability period continues on in the future. And there is no fraud standard. So here, subsection 2 would actually be less favorable to Dr. Leibowitz because what he said in 2018, three years late, was that he was disabled in January of 2016. That was only eight months into the policy, all right? And eight months into the policy would be the accordion clause that he argues should be included, okay? Then MetLife would get to rescind without showing an intentional misrepresentation. Turning to Kaufman case, Kaufman is highly distinguishable, Judge. In Kaufman, the insurance company attempted to take advantage by including both provisions, which are written in the alternative, all right? So they included the fraud exclusion, and then for good measure, they threw in the accordion clause, thinking they would cover all their bases. So the court in Kaufman was saying, all right, we've got this. It doesn't conform because it includes both instead of either or. And therefore, we're going to pick the one most favorable to the insured because we have to pick one or the other. They did not, as appellant suggests here, rewrite the policy by striking one provision and importing, that's the phrase used in the brief, importing the other provision. They dealt and construed the policy language in the policy. And so that's all Judge Steele did. He changed the term to conform even if it was necessary. Again, we argue that he didn't even need to. And the reason I ask that is the policy uses the word effective, which is a more favorable provision than using issuance date. So did he even need to reform it to a position that was less favorable to the insured? No, Judge, he didn't. And I think it was belt and suspenders at that point to make sure everything was covered. Effective date, actually, as the brief states, this policy was backdated to save age, which was to lower Dr. Leibowitz's premium. That is when an application is pending and the person turns a year older, that would increase the premium for these policies. So the insurance company, as a benefit to the insured, says, all right, we'll backdate the policy, which shortens the contestability period, which favors Dr. Leibowitz. So again, for all of those reasons, the statutory argument is not persuasive. There's nothing further, judges? Thank you very much. Mr. Maloney, you've got five minutes. Returning to the statute of limitations issue, if you let the district court's decision stand as written, the law is that the delayed discovery rule does not apply to insurance companies and their contracts of insurance. There's nothing written in the statute that accepts out insurance companies and their contracts of insurance. The delayed discovery rule is built upon the reasonable predicate that in the context of a fraud action, an intentional tort, the cause of action accrues when the facts that would inform someone that they've been misled were learned or reasonably could have been learned by the exercise of due diligence. If you return to the district court decision, there was no analysis whatsoever of the delayed discovery rule. There was never any analysis why they could not have discovered the existence of the administrative proceedings before November of 2018. Do you have any cases that apply that rule in the insurance context? No, ma'am, I don't. I think that this is kind of a case of first impression for the court. I think that's why it's important for the court to get it right. To sit here and say that insurance companies in making and forming contracts of insurance have no obligation to due diligence with respect to the statute of limitations issue. I'm not talking about a cause of action for fraud. I agree that a cause of action for fraud does not require proof of justifiable reliance, but in the context of a statute of limitations, the inquiry must include when did that cause of action accrue. The delayed discovery rule tells us when by the exercise of due diligence they should have discovered that a misrepresentation was made. The district court's order suggests that in the context of insurance, there is no due diligence for determining when a cause of action accrues. I don't think that that's a proper statement of Florida law. The other issue with the district court's decision was that it put the burden. It said, well, MetLife doesn't have to even plead application of the delayed discovery rule, but we have several cases which have been cited to the court. It says that it is the party who is relying upon the delayed discovery rule to plead the facts which indicate why it could not, with the exercise of reasonable diligence, have discovered the misleading information at an earlier date. MetLife did not plead anything in its complaint as to why it could not have discovered the misrepresentation, alleged misrepresentation, earlier date. It would be a very new move in Florida law to hold, as you're suggesting, right? I don't think so. I think that that, I mean, you just said it's a case of first impression. In the context of applying the delayed discovery rule with respect to issuing contracts for insurance, that, I think, is a case of first impression. My research did not uncover a case where a delayed discovery rule was applied in the context of issuing a contract of insurance. Right, so saying that it needed to be would be a big move, right? I think it's establishing Florida law that needs to be clarified. Would it be appropriate, do you think, for a federal court to make a move like that? Or would you say that we would need to certify that to the state in which that would have an extraordinary impact? I think, in my opinion, I think the law is clear enough that the federal court can do it. But if the federal court feels uncomfortable doing it, then it's probably a good issue to certify to the Supreme Court and let the Supreme Court decide. I do not think that the delayed discovery rule does not apply to insurance companies and their contracts of insurance. And I read the case law. And the case law tells me that it is the party relying upon the delayed discovery rule who has the burden of pleading the facts as to why it could not have discovered the alleged misrepresentation at an earlier date. And, of course, here, I well could have discovered the alleged misrepresentation by checking the licensing files, just as this claims department did, even before the claim was formally submitted. I want to move... It's a lot less work to check when you have a payout than to double check every item on every insurance application, right? I disagree. And I'm going to tell you from personal experience. Many years, I was general counsel for a life and health insurance company. And I know from the underwriting department that we commonly, when we get in health applications we commonly send out an APS to medical doctors that were listed in the application so that we could get a profile of the individual's medical health. We did not rely entirely upon the disclosures in the application. We would send out what we called an APS, attending physician statement, and we would wait until the information came back from the doctor's office or hospital, whoever the medical provider was, and we would incorporate the information that came in from the doctor's office or the medical provider. And if contrary information was given us, we would contact the applicant and say, okay, Dr. Smith told us that back in two years ago you had surgery on your spleen. So is that a no? It's not a lot more work? I think it's a little bit more work, but it's necessary work if you're going to underwrite. And I think it gets down to the equities of the situation. I think we've got your argument. Thank you. Thank you. Thank you, Your Honor. We have finished our arguments for the day and for the week, and court is adjourned.